IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> vs. <br><br> **JASON CLAY** | Criminal No: 4:22-cr-00580-JD <br><br><br> **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM** |

On June 3, 2025, Defendant Jason Clay (hereinafter "Defendant" and/or "Clay") submitted a Sentencing Memorandum in this matter, including a new objection to the Presentence Investigation Report ("PSR"). *See* ECF No. 322. The Government maintains that the United States Probation Office ("USPO") properly calculated the Defendant's guidelines and that a sentence of 12 months' incarceration is appropriate based on the Guidelines, Defendant's criminal history, and the 18 U.S.C. § 3553(a) factors, as set forth in this Response.

**I.    BACKGROUND.**

On June 29, 2022, Clay was indicted and charged with two wildlife-related crimes as part of a ten-count multi-defendant Indictment. *See* ECF No. 62. On January 24, 2024, Clay pleaded guilty to Count Six of the Indictment against him, which charged him with selling an endangered chimpanzee in interstate commerce. *See* ECF No. 258. On June 3, 2025, Defendant Clay submitted a Sentencing Memorandum. *See* ECF No. 322. The Sentencing Memorandum requested a downward variance based on the § 3552(a) factors and included an additional objection to the USPO's market value calculation based on a collateral forfeiture schedule used for petty offenses. *Id.* p. 13.

## II. OBJECTIONS TO THE PRESENTENCE REPORT.

The Defendant previously objected to the USPO's $200,000 market value calculation, and the Government addressed those objections in its Sentencing Memorandum. *See* ECF No. 323. In Clay's recent filing, he included an additional basis for his objection, which is addressed here. The Government believes his new basis is equally uncompelling and that the proper market value for Clay's sale of a baby chimpanzee is $200,000.

### A. The Proper Calculation of the Wildlife's Market Value is $200,000.

The PSR correctly calculated the market value of illegal wildlife in this case as $200,000. PSR ¶ 82. Clay originally objected to the value calculation based on the expenses he incurred on behalf of the chimpanzee and a study related to the value of small captive pet monkeys. *See* Addendum to PSR pp.1-3. In Clay's Sentencing Memorandum, he has also objected because he claims a Federal Collateral Forfeiture Table ("Forfeiture Table") should be used to value wildlife. Clay's original arguments were unpersuasive, as stated in the Government's Sentencing Memorandum. *See* ECF No. 323. His new argument is unconvincing because Forfeiture Tables bear no relation to the value of wildlife.

Guideline 2Q2.1(b)(3)(A)(ii) directs the Court to increase the offense level based on the "market value" of the wildlife involved and the table contained in U.S.S.G § 2B1.1. Application Note 4 then sets forth a two-step analysis for determining the market value. U.S.S.G § 2Q2.1 App. N. 4. First, if information is reasonably available, the market value is the fair-market retail price and the Court should use that price, ending the inquiry. *Id.*; *United States v. Butler*, 694 F.3d 1177, 1181 (10th Cir. 2012). If the Court finds that the fair-market retail price is difficult to ascertain, then the Court may move to the second step and determine a reasonable estimate based on other reliable information. *Butler,* 694 F.3d at *1181*. ("In other words, a district court must make a factual

determination that the fair-market retail price is not readily available before resorting to estimation of the animal's value.").

Here, as set forth initially in the Government's Sentencing Memorandum, the market value of Clay's chimpanzee is easily determined, and the Court has no need to try to estimate its value by other means. Clay himself negotiated the price of the chimpanzee and received $200,000 in an arm's-length transaction with co-Defendant Antle. In fact, Clay paid $100,000 for temporary use of that same chimpanzee. Antle purchased baby chimpanzees for the same price two more times and knowledgeable witnesses, including the chimpanzee's breeder, testified that $200,000 is the market value of a baby chimpanzee. The guideline outlines a two-step process, and this Court need not proceed to the second step because, contrary to the Defendant's argument, there is no ambiguity on the market value.

Forfeiture tables, which are disconnected from the value of wildlife, do not cause any ambiguity such that the Court needs to evaluate other "reliable information." *See* U.S.S.G § 2Q2.1 App. N. 4. The tables apply to certain petty offenses, and their purpose is to "accept a fixed-sum payment in lieu of the defendant's appearance and end the case." Nothing suggests that the values listed therein included any attempt to find a "reasonable estimate" for the animals themselves. *Id*. The disconnect between market value and the Forfeiture Table is most obvious when evaluating how the tables treat CITES-listed species. All CITES I species, including chimpanzees, rhinoceros, vaquitas and more, are listed as $5,000. The market value of a single rhino horn is well known, selling for a minimum of $20,000 per pound and ranging up to more than $300,000 per pound for finished goods, as determined by courts throughout the United States. *See, e.g., United States v. Hess*, 829 F.3d 700, 703 (note that this case was decided after *Bertucci*, *infra*, in the same Circuit); *United States v. Levine*, 743 Fed.Appx. 154, 155 (9th Cir. 2018). The vaquita (*Phoecoena sinus)*

is the smallest porpoise in the world, and is virtually priceless – it is estimated that there are fewer than ten left in the wild. Yet pursuant to the Defendant's argument, a person could sell a five-pound rhino horn or could capture and sell a vaquita and be held accountable for just $5,000. That is far from a "reasonable estimate."

Defendant Clay relies on *United States v. Bertucci*, in which Defendant Bertucci pleaded guilty to killing two birds for non-commercial purposes. 794 F.3d 925 (8th Cir. 2015). Though the Government believes the use of forfeiture tables in *Bertucci* was wrongly decided, it still adds little value to this case. In *Bertucci*, there was no sale, so the Court could not rely on the price actually paid for the birds. Here, the Court has plentiful evidence of the sale price of Clay's chimpanzee and multiple others. The Fourth Circuit, unlike the Eighth Circuit in *Bertucci*, has uniformly used the price paid, or offered, for illegal animals as the market value. *See, e.g.*, *United States v. Dove*, 247 F.3d. 152, 159 (4th Cir. 2001) (finding that the average black market price was the proper valuation for sale of illegal bear gall bladders); *United States v. Clark*, 986 F.2d 65, 70 (4th Cir. 1993) (ruling that the defendant's statements regarding his expected sale price of tiger skin rug were sufficient to establish market value); *United States v. Borden*, 10 F.3d 1058, 1063 (4th Cir. 1993) (finding that the actual sale price of illegal mussels was the proper market value).

Therefore Defendant Clay's new argument regarding valuation of the chimpanzee he rented for $100,000 and sold for $200,000 is unpersuasive in this case where there is a clear market value and collateral forfeiture tables do not muddy that clear market value in any way.

### III. THE GOVERNMENT BELIEVES THAT AN EVALUATION OF THE STANDARDS SET FORTH IN 18 U.S.C. § 3553(a) WARRANTS A SENTENCE OF 12 MONTHS.

Along with the Defendant's objection to the PSR's market value, Clay argues that the Government "does not oppose a variance"; that he deserves a below-guidelines sentence due to his

"law-abiding life"; and that co-Defendant Bybee's sentence is informative. *See* ECF no. 322. The Government disagrees with all of those claims and maintains that a sentence of 12 months' imprisonment is appropriate.

First, the Government submitted a Motion requesting a downward departure of 2-levels based on Clay's assistance. *See* ECF No. 318. As explained in that Motion, the Government's requested offense level is a 13, with a guideline range of 12-18 months. The Government believes that a sentence within that guideline range is appropriate and opposes a variance from that range.

Second, the Defendant makes no mention of his prior crimes or convictions when requesting a variance. Instead, Clay describes his history as "exemplary" and "law-abiding." Yet before this case, the Defendant was convicted on charges of organized criminal burglary, theft, aggravated assault causing serious bodily injury, and exploitation of his mentally disabled relative. *See* PSR ¶¶ 68-70. He violated his terms of probation in two of those cases when he committed the instant crime. *See* PSR ¶¶ 69-70. He was also charged in 2022 with defrauding an out-of-state buyer by collecting a $50,000 deposit for a baby giraffe, then selling the giraffe to a different person at auction and refusing to refund the $50,000. *See* PSR ¶ 75. That case was dismissed after Clay paid restitution to the buyer. These crimes, all of which were serious and one of which was violent, only add up to a criminal history score of 1 for odd reasons. Clay received probation in all the cases, which limits the number of criminal history points. *See* U.S.S.G. § 4A1.1(c). Equally impactful is that the convictions for aggravated assault and exploitation, though they took place years apart and have no relation to each other, were sentenced on the same day. *See* PSR ¶¶ 69-70. If two crimes are sentenced on the same day, regardless of their relation or severity, they can be counted as a single sentence and thus a single criminal history point. *See* U.S.S.G. § 4A1.2(a)(2). Thus Defendant Clay ended up with a limited criminal history score due a quirk of

the guidelines, and it is certainly not because he has been "law-abiding." Quite the opposite, he has consistently shown that he is not deterred by probation and will commit further crimes when he feels it will benefit him.

Finally, Clay relies extensively on co-Defendant Bybee's probationary sentence to argue that there should not be unwarranted sentence disparities. Bybee and Clay pleaded guilty to the same Endangered Species Act charge, but the similarities end there, and a greater sentence for Clay is warranted. Meredith "Moksha" Bybee pleaded guilty to illegally transporting two juvenile cheetahs with a total value of $35,000. *See* ECF No. 205. Bybee, however, committed the crime at the instruction and direction of co-Defendant Antle. She did not negotiate the deal, did not make any money on the transaction, did not create any paperwork, and did not benefit from the illegal transaction. In fact, Bybee did not even have a credit card or bank account, her financial existence was controlled and directed by her employer and boyfriend, Doc Antle. Though she did commit a crime, and admitted to doing so, she did not control any aspect of the crime and she committed it for the benefit of co-Defendant Antle. Further, Bybee had no criminal history at all – not even a known arrest. She ended up with an offense level of 10 with a criminal history score of 0, placing her in Zone B of the guidelines, where probation is permissible. *See* ECF No. 218.

None of the mitigating factors present in Bybee's case are present here. Defendant Clay procured the chimpanzee illegally, negotiated the chimpanzee deal with Antle, then sold the chimpanzee to Antle illegally. Clay was the driving force behind his crime, he controlled all aspects, and he profited at least $150,000 from the transaction personally. Clay directed an employee to drive to South Carolina and bring back the cash as well as a gibbon, just as Antle directed Bybee to do so. Clay has an Offense level of 15 before the government's Motion, as compared to Bybee who had an offense level of 10. Clay also has a significant criminal history,

which is underrepresented by his score of 1. Thus Defendant Clay must receive a significantly greater sentence than Bybee to account for the significant disparity in the nature of their conduct and criminal history.

### IV.    CONCLUSION.

For the reasons stated in this memorandum, the Government believes that the USPO properly calculated Defendant Clay's guidelines and a sentence of 12 months is a sufficient but not greater than necessary sentence to comply with the relevant sentencing factors.

RESPECTFULLY SUBMITTED,

BRYAN STIRLING
UNITED STATES ATTORNEY

By: /s/ *Amy Bower*
Amy F. Bower (Fed. Id. 11784)
Assistant U.S. Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
(843) 727-4381
Amy.Bower@usdoj.gov


ADAM R.F. GUSTAFSON
ACTING ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL RESOURCES
DIVISION

By:  /s/ *Patrick Duggan*
Patrick M. Duggan
Senior Trial Attorney
Environmental Crimes Section
U.S. Department of Justice
Tel.: (202) 305-0366
Patrick.Duggan@usdoj.gov

Charleston, South Carolina
June 6, 2025